**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, and GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, | ) Case No. 12-00833-SC<br>)<br>) ORDER GRANTING MOTION FOR<br>) <u>PARTIAL SUMMARY JUDGMENT</u> |
| Plaintiffs, | ) |
| v. | )<br>) |
| MICHAEL CHANG, d/b/a SUNRISE CLEANERS, INC., and ROXANNE CHANG, d/b/a SUNRISE CLEANERS, INC., | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## I.   **INTRODUCTION**

This case involves an insurance coverage dispute arising from underlying state court actions and government orders concerning the alleged contamination of a property owned by Defendant Michael Chang (the "Property").  Defendant Michael Chang and his wife, Defendant Roxanne Chang (collectively, the "Changs"), operated a dry cleaning business on the property from 1977 to 1981.  During this period, the Property was insured by the above-captioned plaintiffs (collectively, "Great American").  Through this action, Great American seeks a declaration that it does not owe a duty to defend or indemnify the Changs in the underlying actions.  Now

United States District Court
For the Northern District of California

before the Court is Great American's motion for partial summary judgment. ECF No. 64 ("MSJ"). The motion is fully briefed, ECF Nos. 68 ("Opp'n"), 69 ("Reply"), and appropriate for determination without oral argument per Civil Local Rule 7-1(b).[1] For the reasons set forth below, Great American's motion for partial summary judgment is GRANTED.

## II. <u>BACKGROUND</u>

The Property at issue in this case is located on Baldwin Avenue in San Mateo, California. ECF Nos. 16 ("Compl.") ¶ 4, 29 ("Answer") ¶ 4. Various parties have alleged that the Property is contaminated with PCE and stoddard solvent due to leaking underground storage tanks. The Changs acquired the Property in 1977, along with a dry cleaning business already located on the Property. Michael Chang operated a dry cleaners on the Property from 1977 until about 1981 under the name Sunrise Cleaners. In 1981, Michael Chang sold the Sunrise Cleaners business, though he continued to own the Property and leased the premises to others.

Soon after the Changs acquired the Property, Great American issued a policy to Sunrise Cleaners for a policy period of December 15, 1977 to December 15, 1980. Great American later issued a policy to Michael Chang for a policy period of December 15, 1980 to

---

[1] The Changs' opposition brief exceeds the page limits set forth in Civil Local Rule 7-3(a). Further, the Changs filed a surreply brief without seeking leave of the Court, in violation of Civil Local Rule 7-3(d). ECF No. 73 ("Surreply"). The Surreply does not present any evidence or authority that was previously unavailable to the Changs. Nor does it respond to new arguments raised on reply. In the interest of justice, the Court has reviewed all of the arguments raised by the Changs. However, the Court advises the Changs to comply with the Civil Local Rules going forward, as future violations may have consequences.

**United States District Court**
For the Northern District of California

December 15, 1983.  The Changs claim that Roxanne Change is an
additional insured under the policies.  Neither Great American nor
the Changs retained a copy of the policies, but the parties have
stipulated to some of the policy terms, including policy limits of
$500,000 for property damage.

The Changs later leased the Property to Bilal Kartal
("Kartal"), who opened an Italian restaurant on the premises.  In
2006, Kartal brought a nuisance action against the Changs in the
California Superior Court for San Mateo County in connection with
an alleged solvent leak on the Property (the "Kartal Action").  ECF
No. 65 ("RJN") Ex. 1 ("Kartal Compl.").  Kartal alleges the
following: At the time the Changs purchased the Property in 1977,
they knew or should have known that one or more storage tanks
containing dry cleaning solvent were buried under a previously
unused portion of the Property behind what is now the restaurant.
Id. ¶ 3.  In 1992, Kartal built a patio behind the restaurant.  Id.
¶ 1.  The patio was later enclosed and became a banquet area
central to the restaurant's business.  Id.  In or around 2002 or
2003, customers began noticing a peculiar odor coming from the
banquet area, which was caused by solvents leaking from the buried
storage tanks.  Id. ¶ 6.  The odor became worse over time and drove
customers away from the restaurant.  Id. ¶¶ 7-8.

At some unspecified time, the California Regional Water
Quality Control Board (the "State Water Board") began to
investigate the alleged contamination at the Property.  Zacharias
Decl. Ex. 1.[2]  On December 28, 2007, the Changs tendered the Kartal

---

[2] Catherine Zacharias ("Zacharias"), a claims manager at Great
American who has worked on the Changs' claims, filed a declaration

United States District Court
For the Northern District of California

1   Action, along with the state investigation, to Great American for

2   defense and indemnity.  Id.  As to the government investigation,

3   the Changs informed Great American: "The local Environmental Health

4   Department, [State Water Board] and federal Environmental

5   Protection Agency are investigating the liability of your insured.

6   Governmental agencies have ordered action on the part of the

7   responsible parties to investigate the occurrence and mitigate the

8   damages to groundwater and off-site properties."  Id.  Great

9   American initially denied the tender with respect to both the

10  Kartal Action and the government investigation.

11       After Great American denied the tenders, the Changs filed

12  cross-complaints in the Kartal Action against various third

13  parties, including Grace Yamaguchi ("Yamaguchi"), who allegedly

14  operated a dry cleaners on the property before the Changs, and

15  Christopher Chang (no relation to the Changs), who allegedly

16  operated a dry cleaners on the property after the Changs.  RJN Exs.

17  3-4.  In their amended cross-complaint in the Kartal Action, the

18  Changs alleged that Yamaguchi and Christopher Chang caused the

19  solvent contamination on the Property and asserted claims for

20  negligence, indemnity, and contribution, among other things.  RJN

21  Ex. 4.  The Changs prayed for "response costs, lost rents and all

22  other damages incurred due to Cross-Defendants['] [conduct]," and

23  "damages, defense costs and potential liability, if any."  Id. at

24  20-21.

25       On February 11, 2009, the court in the Kartal Action entered

26  "Pre-Trial Order No. 5," which stated: "In order to avoid

27

28  in support of Great American's motion for summary judgment.  ECF
    No. 64-6 ("Zacharias Decl.").

4

unnecessary filing of pleadings by Defendants and Cross-Defendants in this action, it shall be deemed that . . . [a]ll Defendants and Cross-Defendants have filed Cross-Complaints for implied equitable indemnity and for a determination of comparative negligence against all of the Defendants and Cross-Defendants." RJN Ex. 10. Michael Chang then requested that Great American indemnify him with respect to the cross-complaints that were deemed filed in the Kartal Action. Compl. ¶ 83; Answer ¶ 83. In response, Great American denied that the "deemed" affirmative cross-complaints gave rise to a duty to defend, but agreed to provide a defense subject to a full reservation of rights. Id.

Yamaguchi and Christopher Chang filed actual cross-complaints against the Changs in late 2010. RJN Exs. 5 ("C. Chang X-Compl."), 6 ("Yamaguchi X-Compl."). These cross-complaints also named as a defendant Eun Kyung Lee ("Lee"), who allegedly operated a dry cleaning business on the Property after Christopher Chang, from approximately 1989 until 1996. C. Chang X-Compl. ¶ 23; Yamaguchi X-Compl. ¶ 21. Yamaguchi and Christopher Chang's cross-complaints essentially sought indemnity and contribution from the Changs for any damages for which they were held liable. In March 2011, Lee also filed a cross-complaint for indemnity and contribution against the Changs, Yamaguchi, and Christopher Chang. RJN Ex. 7 ("Lee X-Compl."). Additionally, Lee sought "damages in the form of property damage, contents damage, loss of value, loss of use, loss of rents, repair costs, and other economic and non-economic damages." Id. at 5.

Apparently, the State Water Board continued to investigate contamination on the Property as the Kartal Action was ongoing.

**United States District Court**
For the Northern District of California

1    The parties have not filed with the Court any documents actually
2    issued by the State Water Board.  However, according to an April
3    10, 2009 letter from the Changs' counsel, the Changs applied for
4    funding from the California Underground Storage Tank Fund (the
5    "Storage Tank Fund") for pollution clean-up on the Property.
6    Zacharias Decl. Ex. 4.  The State Water Board denied the
7    application, and the Changs requested that Great American pay for
8    legal fees and costs incurred to challenge that denial.  Id.
9    Subject to a complete reservation of rights, Great American agreed
10   to pay, and has paid, certain fees and costs incurred by the Changs
11   to prosecute the litigation against the State Water Board.
12   Zacharias Decl. ¶ 10.

13        At some unspecified time, the Changs conducted a voluntary
14   site investigation and recommended further investigation of alleged
15   PCE contamination on the Property.  Compl. ¶ 92; Answer ¶ 92.
16   Sometime in 2010, the State Water Board approved the proposed
17   investigation and asked the Changs to submit a work plan.  Id.  The
18   Changs requested that Great American pay the costs of the site
19   investigation approved by the State Water Board.  Zacharias Decl. ¶
20   11, Ex. 5.  Great American agreed to pay certain costs in
21   connection with the investigation, subject to a full reservation of
22   rights.  Id. ¶ 11.

23        Great American brought this action against the Changs in
24   February 2012.  Great American's amended complaint asserts nine
25   causes of action for, inter alia, declaratory relief, reimbursement
26   of money paid, and breach of contract.  Great American essentially
27   seeks a declaration that it does not owe the Changs a duty to
28   defend or indemnify as to the Kartal Action or the government

**United States District Court**
For the Northern District of California

orders.  It also seeks reimbursement of the amounts it has paid or will pay on behalf of the Changs.  The Changs have counterclaimed for breach of contract and tortious breach of the covenant of good faith and fair dealing.  Great American now moves for partial summary judgment on its claims and the Changs' counterclaims.

## III.  <u>LEGAL STANDARD</u>

Entry of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Summary judgment should be granted if the evidence would require a directed verdict for the moving party.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251 (1986).  Thus, "Rule 56[ ] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255.  However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Id.</u> at 252.

## IV.  <u>DISCUSSION</u>

Great American has asked the Court to render summary judgment on ten issues: (1) & (2) whether Great American has a duty to defend or indemnify the Changs with respect to government agency

**United States District Court**
For the Northern District of California

1    orders to address pollution; (3) & (4) whether Great American has a

2    duty to defend or indemnify the Changs with respect to the

3    complaint in the <u>Kartal</u> Action; (5) whether Great American has duty

4    to pay the Changs' expenses of pursuing claims against other

5    parties in the <u>Kartal</u> Action; (6) whether Great American has a duty

6    pay the Changs' expenses in pursuing ligation against the Storage

7    Tank Fund; (7) & (8) whether Great American has a duty to defend or

8    indemnify as to the cross-complaints against the Changs in the

9    <u>Kartal</u> Action; (9) & (10) whether the Changs may recover against

10   Great American on their counterclaims for breach of contract and

11   breach of the covenant of good faith and fair dealing.

12       **A.    <u>The Duty to Defend and the Duty to Indemnify</u>**

13       Before considering the particular issues raised by Great

14   American's motion for partial summary judgment, the Court reviews

15   some general principles concerning the duty to defend and the duty

16   to indemnify.  An insurer generally has a duty to indemnify its

17   insured for risks covered by the relevant insurance policy.  The

18   duty to indemnify and the duty to defend are correlative, but are

19   not coterminous.  <u>Certain Underwriters at Lloyd's of London v.</u>

20   <u>Super. Ct. (Powerine Oil Co.)</u> ("<u>Powerine</u>"), 24 Cal. 4th 945, 958

21   (Cal. 2001).  "Whereas the duty to indemnify can arise only after

22   damages are fixed in their amount, the duty to defend may arise as

23   soon as damages are sought in some amount."  <u>Id.</u> (citations

24   omitted).  Further, the duty to defend is broader in scope than the

25   duty to indemnify.  <u>Horace Mann Ins. Co. v. Barbara B.</u>, 4 Cal. 4th

26   1076, 1081 (Cal. 1993).  An insurer must defend its insured against

27   a claim that creates even the potential for liability, and so an

28   insurer may owe its insured a duty to defend in a case where no

damages are ultimately awarded.  Id.  Moreover, in "mixed actions" -- actions in which some claims are at least potentially covered by an insurer and the others are not -- "the insurer has a duty to defend the action in its entirety."  Buss v. Super. Ct., 16 Cal. 4th 35, 47-48 (Cal. 1997).

**B.   Duty to Defend as to the Government Orders**

Great American argues that, under the stipulated language of the policies, it has no duty to defend the Changs with respect to government orders pertaining to pollution.  The policies state: "The company shall have the right and duty to defend any suits against the insured seeking damages on account of such bodily injury or property damage . . . ."  Zacharias Decl. Ex. 2 at EXH 018, Ex. 3 at EXH 045.  Relying on Foster-Gardner, Inc. v. National Union Fire Insurance Co., 18 Cal. 4th 857 (Cal. 1998), Great American argues that the duty to defend "suits" does not include the duty to pay costs of responding to government agency orders. Opp'n at 15.

In Foster-Gardner, the California Department of Toxic Substances Control ("DTSC") found that the plaintiff had incurred liability for cleaning up contamination on the site of his wholesale pesticide and fertilizer business.  18 Cal. 4th at 861-63.  The plaintiff tendered the defense of the DTSC order to his insurers, which had issued policies providing that they had a "duty to defend any suit against the insured seeking damages . . . ."  Id. at 863.  The California Supreme Court held that the insurers did not have a duty to defend because the DSTC Order did not constitute a "suit," which the court defined as "a court proceeding

**United States District Court**
For the Northern District of California

1   initiated by the filing of a complaint."[3]  Id. at 887.

2       In response, the Changs cite to an earlier California Supreme

3   Court decision, AIU Insurance Co. v. Superior Court, 51 Cal. 3d

4   807, 818 (Cal. 1990).  Opp'n at 6.  In AIU, the United States and

5   local administrative agencies brought third-party suits against an

6   insured for alleged violations of various environmental laws and

7   the alleged contamination of seventy-nine different hazardous waste

8   sites.  51 Cal. 3d at 815.  The insured brought an action against

9   its insurer seeking a judicial declaration that it was entitled to

10  coverage for costs it might have become obligated to pay as a

11  result of injunctive relief or reimbursement ordered in the third-

12  party suits.  Id. at 816.  The court found that the insurer was not

13  entitled to summary adjudication, because the insured's liability

14  in the third-party suits could constitute damages under the

15  insurance policies.  Id. at 843.

16      The Court finds that AIU is inapposite here.  Unlike the

17  insured in AIU, there is no indication that the Changs have been

18  sued in court by a government agency.  As the California Supreme

19  Court observed in Foster-Gardner: "AIU's holding -- that there is

20  coverage for certain damages sought in a third-party suit

21  prosecuted [by a government agency] -- has nothing to do with

22  whether the carrier has a duty to defend when no third-party suit

23  has been filed."  18 Cal. 4th at 857 (quotations omitted).

24      The Changs also suggest that it is irrelevant whether the

25  government agency orders constitute suits for the purposes of the

26  ---
27  [3] Courts in other states have adopted a broader interpretation,
    holding that an agency proceeding does constitute a suit for the
    purposes of triggering insurance coverage.  See Pac. Employers Ins.
28  Co. v. Servco Pac., Inc., 273 F. Supp. 2d 1149, 1156 (D. Haw.
    2003).

policies, since "there are pleadings before the San Mateo County Superior Court that are asking the court to hold the Changs liable for compliance with an administrative order to investigate pollution-impacted third party properties . . . ."  Opp'n at 6. The Changs appear to be referring to the cross-complaints filed in the <u>Kartal</u> Action.  But whether Great American has a duty to defend in the <u>Kartal</u> Action is a separate question from whether it has a duty to defend with respect to the government agency orders.

Accordingly, the Court GRANTS Great American's motion for summary judgment as to its duty to defend the Changs against the government orders pertaining to pollution.

### C.   <u>Duty to Indemnify as to the Government Orders</u>

The policies state: "[Great American] agrees . . . [t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of property damage caused by the occurrence."  Compl. ¶ 31; Answer ¶ 31.  Relying on <u>Powerine</u>, Great American contends that this language does not create a duty to indemnify the Changs as to the government orders. MSJ at 15-16.

<u>Powerine</u> concerned whether an insurer was liable for costs incurred by the insured in complying with orders issued during administrative environmental proceedings.  24 Cal. 4th at 952-55. Like the policies at issue here, the <u>Powerine</u> policy required the insurer to defend "any suit seeking damages" and to "pay all sums that the insured becomes legally obligated to pay as damages."  <u>Id.</u> at 950.  Based on its earlier holding in <u>Foster-Gardner</u>, which is discussed in Section IV.B <u>supra</u>, the California Supreme Court held that the policy only created a duty to pay money ordered by a court

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

and did not extend to any expenses required by an administrative
agency pursuant to an environmental statute.  Id. at 951.  The
Court reasoned that the duty to defend is broader than the duty to
indemnify.  Id. at 961.  Thus, if an insurer's duty to defend is
not broad enough to extend beyond a civil action pending in court,
the duty to indemnify is not broad enough to extend beyond money
damages awarded by a court.  Id. at 961.

The Changs appear to argue that the government orders involve
damages because of the claims and counterclaims asserted in the
Kartal Action.  See Opp'n at 7.  The Changs' reasoning seems to be
that the Kartal Action creates the potential for a court judgment
finding them liable for the cleanup ordered by the government.  Id.
This argument is unavailing for the reasons set forth in Section
IV.B supra.  The pertinent question here is whether the government
orders, not the pleadings in the Kartal Action, create a duty to
indemnify.  The Court addresses Great American's duty to indemnify
as to the Kartal Action below.

Since there is no indication that the government has brought a
civil action against the Changs, the Court finds that Great
American does not have a duty to indemnify the Changs with respect
to the government orders.

**D.**   **Duty to Defend and Indemnify as to Kartal's Complaint**

Great American contends that it does not have a duty to defend
or indemnify the Changs as to the claims asserted against them by
Kartal, because the damages alleged in Kartal's complaint occurred
after the expiration of the policy period.  MSJ at 16-19.  Great
American points out that the Changs' policy period ran from 1977 to
1983, while Kartal alleges that he was first injured by

12

**United States District Court**
For the Northern District of California

1   contamination caused by the leaking storage tanks in or around

2   2002, when his customers first noticed a peculiar odor emanating

3   from the property.  Id.  The Changs respond that they are entitled

4   to coverage since the loss of use asserted by Kartal was allegedly

5   caused by the Changs' failure to deal with the underground storage

6   tanks when they purchased the property in 1977.  Opp'n at 8-9.

7       The Great American policies issued to the Changs constitute

8   third-party liability insurance, since they provide coverage for

9   liability of the insured to a third party, as opposed to coverage

10  for loss or damage sustained directly by the insured.  See

11  Zacharias Decl. at EXH 019 ("This policy does not apply to . . .

12  property damage to property owned or occupied by or rented to the

13  insured . . . .").[4]  The policies obligate Great American "[t]o pay

14  on behalf of the insured all sums which the insured shall become

15  legally obligate to pay as damages because of property damage

16  caused by an occurrence" and "to defend any suits against the

17  insured seeking damages on account of . . . property damage."

18  Zacharias Decl. Ex. 1 at EXH 018.  The policies define "property

19  damage" to mean:

20

21      (1) physical injury to or destruction of tangible
        property which occurs during the policy period
22      including the loss of use thereof at any time
        resulting therefrom, or (2) loss of use of tangible
23      property which has not been physically injured or
        destroyed provided such loss of use is cause by an
24      occurrence during the policy period.

25

26  _____

27  [4] See also Montrose Chem. Corp. v. Admiral Ins. Co., 10 Cal. 4th
    645, 663-666 (Cal. 1995) (discussing the distinction between first-
28  party and third-party liability insurance).

**United States District Court**
For the Northern District of California

1   Id. at EXH 021.  They define "occurrence" to mean "an accident,

2   including continuous or repeated exposure to conditions, which

3   results during the policy period in bodily injury or property

4   damage neither expected nor intended from the standpoint of the

5   insured."  Id.

6        The California Supreme Court addressed almost identical policy

7   language in the context of third-party liability insurance in

8   Montrose.[5]  Montrose involved property damage that was continuous

9   or progressing over a number of years and an insured who had

10  obtained a series of successive liability policies from multiple

11  insurers while the property damage was ongoing.  10 Cal. 4th at

12  655.  At issue was whether an insurer whose policy covered only the

13  last few years of this period had a duty to defend suits alleging

14  continuous and progressive property damage that resulted from

15  hazardous chemicals that the insured started manufacturing before,

16  but continued manufacturing during, the policy period.  Id. at 656-

17  661.  The court held that a continuous condition becomes an

18  occurrence for the purposes of the policy when the property damage

19  manifests:

20        Th[e] policy language unambiguously distinguishes
          between the causative event -- an accident or
21        "continuous and repeated exposure to conditions" --
          and the resulting "bodily injury or property damage."
22        It is the latter injury or damage that must "occur"

---

23  [5] The insurer in Montrose contracted to "pay on behalf of the

24  insured all sums which the insured shall become legally obligated
    to pay as damages because of . . . bodily injury, or . . . property

25  damage to which this insurance applies, caused by an occurrence . .
    . . ."  10 Cal. 4th at 668.  The policy defined "property damage" as

26  "(1) physical injury to or destruction of tangible property which
    occurs during the policy period, including the loss of use thereof

27  at any time resulting therefrom . . . ."  Id.  Occurrence meant "an
    accident, including continuous or repeated exposure to conditions,

28  which results in bodily injury or property damage neither expected
    nor intended from the standpoint of the insured."  Id. at 669.

1   during the policy period, and "which results" from the
2   accident or "continuous and repeated exposure to conditions."

3   Id. at 669.

4       The Montrose court found that its decision was confirmed by
5   prior case law, including Remmer v. Glens Falls Indemnity Co., 140
6   Cal. App. 2d 84 (Cal. Ct. App. 1956).  Id.  In Remmer, the insureds
7   had obtained property insurance for the period of 1945 through
8   1948.  140 Cal. App. 2d at 85.  In 1947, during the policy period,
9   the insureds graded and filled portions of their property.  Id.  In
10  1952, after the policy period, a landslide on the property damaged
11  an adjacent lot.  Id.  The owner of the adjacent lot brought a
12  nuisance action against the insureds, and the insureds tendered the
13  suit to their insurer.  Id.  The Court held that the loss was not
14  covered because "the occurrence of an accident within the meaning
15  of the policy is not the time the wrongful act was committed"
16  (i.e., the grading of the property in 1947), "but the time when the
17  [third] party was actually damaged" (i.e., the landslide in 1952).
18  Id. at 88.

19      Interpreting the language of the policies pursuant to Montrose
20  and Remmer, Great American does not owe a duty to defend or
21  indemnify the Changs as to Kartal's complaint.  With respect to the
22  policies' definition of "property damage," Kartal alleges that the
23  physical injury or destruction of tangible property manifested as
24  early as 2002, when Kartal first started losing customers due to
25  the odor caused by the solvent leak.  Likewise, the "occurrence" or
26  "accident" about which Kartal complains happened as early as 2002.
27  The policies expired in 1983, about nineteen years prior to the
28  events that could potentially trigger coverage.

15

**United States District Court**
For the Northern District of California

1    The Changs argue that Kartal's complaint alleges occurrences

2    in 1977, including failure to discover the storage tanks and

3    failure to discover the contamination at the time of the purchase

4    that proximately caused the property damage.  Opp'n at 8.  But the

5    California Supreme Court rejected this same reasoning in <u>Montrose</u>

6    when it found that the "causative event" does not constitute an

7    occurrence for the purpose of a similarly worded policy.[6]  10 Cal.

8    4th at 669.  The pertinent question is not when the negligent act

9    allegedly occurred, but when the third party was allegedly damaged.

10   <u>See</u> <u>id.</u>  In this case, there is no dispute the Kartal alleges that

11   he was damaged well after the expiration of the policy period.

12   The Changs also argue that the policies provide coverage for

13   loss of use that occurs "at any time."  Opp'n at 9.  Specifically,

14   the policies define property damage as, among other things,

15   "physical injury to or destruction of tangible property which

16   occurs during the policy period including the loss of use thereof

17   at any time resulting therefrom."  Zacharias Decl. Ex. 1 at EXH 21.

18   The Changs' interpretation of this language is unpersuasive.  While

19   the "loss of use" can occur "at any time," it must result from

20   property damage "which occurs during the policy period."  In this

21   case, Kartal could not have possibly suffered property damage

22   during the policy period because he leased the Property over a

23   decade after the policy period's expiration.  Even if the Changs

24   ────────────────────
     [6] Contrary to the Changs' suggestion, <u>State v. Continental

25   Insurance. Co.</u>, 55 Cal. 4th 186 (Cal. 2012), does not hold
     otherwise.  <u>See</u> Opp'n at 9.  <u>Continental Insurance</u> stands for the

26   proposition that an insurer may be held liable for ongoing property
     damage that commenced prior to the policy period as long as some of

27   the continuous property damage occurred during the policy period.
     55 Cal. 4th at 199-200.  In this case, there is no evidence that

28   any of the property damage alleged occurred during the Great
     American policy period.

16

**United States District Court**
For the Northern District of California

1  suffered some property damage from the leaking storage tanks during
2  the policy period, the policies only provide coverage for damage to
3  third parties.[7]

4      For these reasons, the Court finds that Great American does
5  not have a duty to defend or indemnify as to Kartal's complaint.

6  **E.   Duty to Pay Costs Incurred Prosecuting Cross-Complaints**
7      **in the Kartal Action and Seeking Recovery from the**
8      **Storage Tank Fund**

9      Next, the Court must determine whether Great American must pay
10  the costs incurred by the Changs in pursuing cross-complaints
11  against various third parties in the Kartal Action or seeking
12  recovery from the Storage Tank Fund.  The Changs' arguments in
13  favor of finding a duty here are unpersuasive.

14     First, the Changs argue that Great American is obligated to
15  fund their cross-complaints because they are an essential part of
16  the Changs' defense in the Kartal Action.  Opp'n at 10.  However,
17  under California law, an insurer does not have a duty to prosecute
18  a counterclaim or a cross-complaint on behalf of the insured absent
19  some contractual provision requiring such action.  See James 3
20  Corp. v. Truck Ins. Exch., 91 Cal. App. 4th 1093, 1105-06 (Cal. Ct.
21  App. 2001).  The Changs have pointed to no such contractual
22  provision.  In any event, as discussed in Section IV.C supra, Great
23  American does not owe the Changs a duty to defend or indemnify with
24  respect to Kartal's claims against them.

25  ────────────────
26  [7] The Changs argue that the definition of "property damage" used by
    Great American in policies issued after 1993 shows that their
27  interpretation is correct.  Surreply at 8.  As an initial matter,
    the Court is only concerned with the language in the policies at
28  issue.  Further, even if the revised language were used in the
    relevant policies, the Court would reach the same conclusion.

**United States District Court**
For the Northern District of California

1    The Changs also argue that the California Supreme Court's

2    decision in <u>Ameron International Corporation v. Insurance Co.</u>, 50

3    Cal. 4th 1370 (Cal. 2010), requires Great American to provide

4    coverage.[8]  Opp'n at 12.  The Court disagrees.  In <u>Ameron</u>, the

5    Supreme Court held that administrative adjudicative proceedings

6    before an administrative law judge, which involved twenty-two days

7    of trial, numerous witnesses, and substantial evidence, constituted

8    a "suit" triggering an insurer's duty to defend.  <u>Ameron</u>, 50 Cal.

9    4th at 1374.  As the Changs point out, <u>Ameron</u> could be construed as

10   "emphasizing form over substance."  However, nothing in that

11   opinion suggests that an insurer has a duty to fund a cross-

12   complaint or any other type of offensive action by an insured for

13   contribution against a third party.

14   Finally, the Changs argue that Great American has a duty to

15   fund their action against the Storage Tank Fund because Great

16   American "voluntarily and in writing" agreed to advance the Changs'

17   costs in that action.  Opp'n at 12-13.  However, as the Changs

18   concede, Great American advanced those costs under a full

19   reservation of rights.  <u>See</u> Opp'n at 13.  An insurer does not owe a

20   duty to defend merely because it provides a defense under a

21   reservation of rights.  In fact, an insurer may later seek

22   reimbursement from the insured for defending claims that are not

23   even potentially covered.  <u>See</u> <u>Buss</u>, 16 Cal. 4th at 48.

24   ///

25

26   [8] The Changs cite <u>Ameron International Corp. v. Insurance Co.</u>, 150
     Cal. App. 4th 1050 (Cal. Ct. App. 2007), the unpublished opinion by
27   the California Court of Appeal that was later reversed by the
     California Supreme Court; however, they appear to be referring to
28   the California Supreme Court opinion.

18

1    Accordingly, the Court finds that Great American does not owe

2  the Changs a duty to defend or indemnify with respect to their

3  cross-complaints against third parties in the <u>Kartal</u> Action or

4  their action against the Storage Tank Fund.

5    **F.    Duty to Defend and Indemnify as to the Cross-Complaints**

6       **Filed by Christopher Chang, Yamaguchi, and Lee**

7    Next, the Court considers whether Great American has a duty to

8  defend or indemnify the Changs as to the cross-complaints filed

9  against them by Christopher Chang, Yamaguchi, and Lee in the <u>Kartal</u>

10  Action.  As discussed above, the policies obligate Great American

11  to defend "any suits against the [Changs] seeking damages," and to

12  pay all sums "the [Changs] shall become legally obligated to pay as

13  damages."  Great American argues that the cross-complaints do not

14  trigger coverage because they do not seek affirmative recovery from

15  the Changs.  MSJ at 20.  Rather, according to Great American, they

16  merely seek to reduce any liability the cross-complainants may be

17  found to have to the Changs in the <u>Kartal</u> Action.  <u>Id.</u>

18    Great American relies on the California Court of Appeal's

19  decision in <u>CDM Investors v. Travelers Casualty and Surety Co.</u>, 139

20  Cal. App. 4th 1251 (Cal. Ct. App. 2006).  MSJ at 21.  That case

21  concerned alleged contamination on a commercial property owned by

22  the plaintiffs.  <u>CDM</u>, 139 Cal. App. 4th at 1257.  After the State

23  Water Board ordered the plaintiffs to test the property for

24  pollutants, the plaintiffs sued their former tenants under CERCLA

25  to apportion liability for response costs.  <u>Id.</u> at 1266.  The

26  tenants raised affirmative defenses seeking to apportion

27  responsibility to plaintiffs.  <u>Id.</u>  The plaintiffs argued that

28  those affirmative defenses were the functional equivalent of a

**United States District Court**
For the Northern District of California

1    counterclaim and that the plaintiffs' insurer had a duty to defend

2    as to those affirmative defenses.   Id. at 1266-67.   The court held

3    that an affirmative defense would only constitute a suit seeking

4    damages for the purposes of the policy if the affirmative defense

5    "would unquestionably have been a suit for damages if asserted in a

6    court of law."  Id. at 1269.   The court found that the affirmative

7    defenses asserted by the tenants did not trigger coverage because

8    they were "purely defensive":

10          Here, plaintiffs' tenants had no independent suit
            against [plaintiffs] that they sought to reduce to a
11          monetary value by asserting it as a setoff payment for
            the liability that [plaintiffs] was alleging against
12          them.  They had no claim whatsoever and could not have
            sued [plaintiffs] for anything.  Regardless of
13          plaintiffs' characterization of a CERCLA proceeding as
            an action to apportion liability, the reality of CDM's
14          CERCLA case is that [plaintiffs] sued the tenants for
            indemnity as to an obligation imposed upon [them] by
15          the [State Water] Board and the tenants countered with
            an indemnity claim against [plaintiffs].   In this
16          posture, the tenants' indemnity claim was purely
            defensive -- it sought and functioned only to reimpose
17          upon [plaintiffs] what [plaintiffs] w[ere] already
            legally obligated for.
18

20    Id.

21          Like the affirmative defenses in CDM, the cross-complaints in

22    this action are almost exclusively defensive.   The cross-complaint

23    filed by Yamaguchi merely seeks to hold the Changs liable or

24    partially liable for any judgments rendered against Yamaguchi.   See

25    Yamaguchi X-Compl. (praying that the cross-defendants be adjudged

26    liable to Yamaguchi for "total," "partial," and "equitable or

27    comparative indemnity").   As does the cross-complaint filed by

28    Christopher Chang.   See C. Chang X-Compl.  Lee's cross-complaint is

slightly different.  In addition to seeking a set-off against the Changs, Lee asserts "damages in the form of property damage, contents damage, loss of value, loss of use, loss of rents, repair costs, and other economic and non-economic damages in an amount according to proof."  Lee X-Compl. at 5.  However, since Lee operated a dry cleaners on the property between 1989 and 1996, several years after the Great American policy period, these damages cannot trigger a duty to defend or indemnify under the policies.  See Section IV.D supra.

The Changs' opposition brief provides a confused set of arguments on this issue.  The Changs repeatedly concede that Yamaguchi, Christopher Chang, and Lee cross-complaints are "purely defensive," but the Changs then go on to argue that these cross-complaints seek affirmative relief for property damage.  Compare Opp'n at 14-15 with id. at 25.  They contend that CDM is inapposite, but then appear to point out the similarities between that case and the instant action.  Id. at 15.  The Changs also argue, without further explanation, that the cross-complaints should trigger coverage because they are "an essential part of the Changs defense in the underlying Kartal action."  Id. at 14.  Once again, the Changs urge the Court to place "substance over form," but they fail to cite any on-point case law which would support their position.  The Changs' surreply brief does little to clarify their position.  In it, the Changs assert that the cross-complaints show the potential for coverage, because they do not allege when the contamination on the property started or stopped.  Surreply at 3.  However, the Changs again concede that the cross-complaints are "'defensive' in nature."  Id. at 4.

United States District Court
For the Northern District of California

1     For these reasons, the Court finds that Great American does

2 not have a duty to defend or indemnify as to the cross-complaints

3 filed by Yamaguchi, Christopher Chang, and Lee.

4     **G.**   **The Changs' Counterclaims for Breach of Contract and**

5         **Breach of the Covenant of Good Faith and Fair Dealing**

6     Finally, Great American moves for summary judgment on the

7 Changs' two counterclaims.  MSJ at 24-25.  Great American reasons

8 that if the Court finds that Great American does not owe the Changs

9 a duty to defend or indemnify in any of the underlying actions,

10 then the Changs cannot possibly show that Great American breached

11 its duty to defend and indemnify or engaged in bad faith.  Id.  The

12 Changs do not appear to dispute this reasoning.  They merely argue

13 that if the Court does find that Great American owes a duty, then

14 the Court should find that it breached that duty.  Opp'n at 16-17.

15 As Great American has prevailed on all of the issues discussed

16 above, the Court finds that the Changs cannot succeed on their

17 counterclaims.

18

19 **V.**  **CONCLUSION**

20     In sum, the Court finds that the Changs' Great American

21 insurance policies, which provided coverage against third-party

22 lawsuits from 1977 to 1983, do not provide coverage for lawsuits

23 and government actions commenced over twenty years after the

24 policies' expiration.  Accordingly, the Court GRANTS Great

25 American's motion for partial summary judgment.  The Court finds

26 that Great American is entitled to partial summary judgment of the

27 following issues:

28

- Under the language of its insurance policies, Great American has no duty to defend or indemnify the Changs with respect to government orders to address pollution.
- Under the language of its insurance policies, Great American has no duty to defend or indemnify the Changs as to the complaint filed by Kartal in the <u>Kartal</u> Action.
- Under the language of its insurance policies, Great American has no duty to defend or pay expenses incurred by the Changs with respect to cross-complaints the Changs filed against other parties in the <u>Kartal</u> Action.
- Under the language of its insurance policies, Great American has no duty to pay expenses incurred by the Changs in seeking recovery from the California Underground Storage Tank Fund.
- Under the language of its insurance policies, Great American has no duty to defend or indemnify the Changs as to cross-complaints filed against the Changs in the <u>Kartal</u> Action.
- Because Great American is entitled to partial summary judgment of the above issues, the Changs are not entitled to any recovery from Great American under their counterclaims for breach of contract and breach of the covenant of good faith and fair dealing.

IT IS SO ORDERED.

Dated:  June 19, 2013                        _____

                                             UNITED STATES DISTRICT JUDGE